**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| SPENNETTA FAMILY CARE | ) | |
| CHIROPRACTIC, S.C., | ) | |
| on behalf of plaintiff and the class defined | ) | |
| below, | ) | |
| | ) | |
| Plaintiff, | ) | 17-CV-190 |
| | ) | |
| vs. | ) | |
| | ) | |
| SPECTRUM SOFTWARE SOLUTIONS, INC., | ) | |
| FRANK & ISRAEL, LTD., doing business as | ) | |
| FIRMS and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

Plaintiff, Spennetta Family Care Chiropractic, S.C., has requested pursuant to Fed. R.

Civ. P. 23, that this Court enter an order determining that this action may proceed on behalf of

the following classes:

> All persons with fax numbers (1)  who, on or after a date from years prior to the filing of
> this action (28 U.S.C. §1658), (2) were sent faxes by or on behalf of defendant Spectrum
> Software Solutions, Inc., or FIRMS promoting their goods or services for sale (3) and
> which did not contain an opt out notice as described in 47 U.S.C. §227.(*Count I*)

> All persons with Wisconsin fax numbers (1) who, on or after a date six years prior to the
> filing of this action, (2) were sent faxes by or on behalf of defendant Spectrum Software
> Solutions, Inc., or FIRMS promoting their goods or services for sale (3) and which did
> not contain an opt out notice as described in 47 U.S.C. §227. (*Counts II and III*)

An opt out notice as described in 47 U.S.C. § 227 means:  (i) on the first page of the fax (ii) that

states that the recipient may make a request to the sender not to send any future unsolicited

advertisements to a telephone facsimile machine (iii) that states that failure to comply, within the

shortest reasonable time, as determined by the Federal Communications Commission, is

1

unlawful; (iv) that provides instructions on how to submit an opt out request and (v) that includes a domestic contact telephone and facsimile machine number and a cost-free mechanism for the recipient to transmit such a request to the sender that permit a request to be made at any time on any day of the week.

## I.    NATURE OF THE CASE

Plaintiff brought this action after receiving unsolicited advertising faxes (<u>Exhibits A-B</u>) sent by defendants Spectrum Software Solutions, Inc., and FIRMS.  Plaintiff alleges that defendant violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Wisconsin Stats. §100.20 and common law (conversion).

The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).  The TCPA provides for affirmative defenses of consent or an established business relationship.  Both defenses are conditioned on the provision of an opt out notice that complies with the TCPA.  *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013);  *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013).

Plaintiff contends (Count II) that the transmission of unsolicited advertising faxes is also an unfair practice that violates Wisc. Stats. §100.20, which provides:

> (1)    Methods of competition in business and trade practices in business shall be fair.  Unfair methods of competition in business and unfair trade practices are hereby prohibited. . .

> (5)    Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall be recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee. . .

2

Section 100.20 is the "mirror image" of §5 of the Federal Trade Commission Act, 15 U.S.C. §45, which also prohibits unfair trade practices and unfair competition, *Reusch v. Roob.* 234 Wis. 2d 270, 286, 10 N.W.2d 168, ¶25 (2000).  In determining whether a practice is "unfair," federal law considers:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise  --  whether, in other words, it is within at least the penumbra of some common-law, statutory or other established concept of unfairness;

> (2) whether it is immoral, unethical, oppressive or unscrupulous;

> (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n. 5 (1972).

The transmission of unsolicited advertising faxes violates public policy as established by statutes, transfers part of defendant's advertising cost to the hapless recipient, and costs the recipient money.

Plaintiff further contends (Count III) that defendants converted the paper and toner in plaintiff's fax machine to their own use by using them to print unsolicited advertising faxes illegally sent to plaintiff. "The elements of conversion are (1) intentionally controlling or taking property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the owner's possessory rights to the property." *Deutsche Bank Nat. Trust Co. V. Pauk*, 342 Wis.2d 248, 816 N.W.2d 350, ¶59 (Wisc. App. 2012). Plaintiff clearly owned and had an absolute and unconditional right to the paper and toner; by causing them to be used to print their unsolicited advertisement, defendant converted the paper and toner and rendered them unusable by plaintiff.

3

## II.      REQUIREMENTS FOR CLASS CERTIFICATION

Federal Rule of Civil Procedure 23(a) states:

(a)  Prerequisites for the maintenance of a class action.

One or more members of a class may sue or be sued as representative parties on behalf of all only if:

> (1) The class is so numerous that joinder of all members is impracticable,
>
> (2) There are questions of fact or law common to the class,
>
> (3) The claims or defenses of the representative parties are typical of  the claims or defenses of the class, and
>
> (4) The representative parties will fairly and adequately protect the interest of the class.

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action  is

maintainable if the above prerequisites have been met and:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Class actions are essential to enforce laws protecting consumers.  As the Illinois

Appellate Court stated in *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 574

N.E.2d 760 (1st Dist. 1991):

> In a large and impersonal society, class actions are often the last barricade of consumer protection.  . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups.  The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting.  The alternatives to the class action  --  private suits or governmental actions  --  have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective.  The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer. (574 N.E.2d at 764, 766)

4

The Second Circuit noted that class actions allow for the aggregation of small claims held by many consumers. Denial of certification would lead to a situation where consumers holding a small claim would be less likely to pursue relief given the costs involved, to the benefit of businesses which, in violating the law, obtain a significant financial benefit from their actions without fear of meaningful litigation. *Ross v. Bank of America NA*, 524 F.3d 217 (2d Cir. 2008).

As demonstrated below, each of the requirements for class certification is met.

**A.     Rule 23(a)(1)  --  Numerosity**

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40. *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members); *Kulins v. Malco*, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 sufficient).

*Driver v. AppleIllinois LLC*, 265 F.R.D. 293, 300 (N.D.Ill. 2010) held that

plaintiffs are not required to specify the exact number of persons in the class; a properly-supported estimate is sufficient. See *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). A court may make common sense assumptions to determine class size. See *Hispanics United of DuPage Co. v. Village of Addison, Illinois*, 160 F.R.D. 681, 688 (N.D.Ill. 1995) (quotations and citations omitted).

*Perdue v. Individual Members of the Indiana Board of Bar Examiners*, 266 F.R.D. 215, 218

5

(S.D.Ind. 2010), noted that

> the Seventh Circuit has not provided specific guidance about when a putative class is large enough to satisfy the numerosity requirement. However, in [*Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)], the court assumed that fourteen individuals would be insufficient...  Similarly, in *Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006), the court noted that "joinder of fewer than 40 workers... would be practical" so class certification was inappropriate.

"A class action may proceed upon estimates as to the size of the proposed class."  *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982).   The court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983).  "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . .  Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1992), §7.22.A.

In the present case, it is reasonable to infer numerosity from the fact that defendants used unsolicited advertising faxes to generate business.  Exhibit A is not specifically addressed to anyone and was obviously drafted for transmission to a large number of persons.   It makes no economic sense to prepare and send such a fax unless it is sent to more than 40 people.

Thus, the fact that defendants advertised by means of unsolicited advertising faxes makes it reasonable to infer that the faxes were sent to more than the 20-40 people necessary to satisfy the numerosity requirement.  *Swiggett v. Watson*, 441 F. Supp. 254, 256 (D. Del. 1977) (in action challenging transfers of title pursuant to Delaware motor vehicle repairer's lien, fact that Department of Motor Vehicles issued printed form for such transfer in and of itself sufficient to

6

show that numerosity requirement was satisfied); *Westcott v. Califano*, 460 F. Supp. 737, 744
(D. Mass. 1978) (in action challenging certain welfare policies, existence of policies and 148
families who were denied benefits to which policies applied sufficient to show numerosity, even
though it was impossible to identify which of 148 families were denied benefits because of
policies complained of); *Carr v. Trans Union Corp.*, C.A. 94-22, 1995 WL 20865, 1995 U.S.
Dist. LEXIS 567 (E.D. Pa. Jan. 12, 1995) (Fair Debt Collection Practices Act class certified
regarding defendant Trans Union's transmission of misleading collection notices to consumers);
*Colbert v. Trans Union Corp.*, C.A. 93-6106, 1995 WL 20821, 1995 U.S. Dist. LEXIS 578 (E.D.
Pa. Jan. 12, 1995) (same).  Plaintiff will obtain the exact number of class members through
discovery and requests a briefing schedule long enough to obtain such information.

  **B.**  **Rule 23(a)(2)  -- Commonality; and Rule 23(b)(3) --**
      **Common Questions of Law or Fact Predominate**

  Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law <u>or</u> fact.  Rule
23(b)(3) requires that the questions of law or fact common to all members of the class
predominate over questions pertaining to individual members. The commonality requirement is
satisfied if there are common questions linking the class members that are substantially related to
the outcome of the litigation.  *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).  Common
questions predominate if classwide adjudication of the common issues will significantly advance
the adjudication of the merits of all class members' claims.  *McClendon v. Continental Group,
Inc.*, 113 F.R.D. 39, 43-44 (D.N.J. 1986); *Genden v. Merrill Lynch, Pierce, Fenner & Smith,
Inc.,* 114 F.R.D. 48, 52 (S.D.N.Y. 1987); *Spicer v. Chicago Board Options Exchange*, CCH
Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990); *Alexander
Grant & Co. v. McAlister*, 116 F.R.D. 583, 590 (S.D. Ohio 1987).  The "common questions" may

be the existence and legality of a standard business practice.  *Haywood v. Superior Bank*, 244 Ill. App. 3d 326, 614 N.E.2d 461, 464 (1st Dist. 1993); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 774 (N.D. Ill. 1989). Where a case involves "standardized conduct of the defendant toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met."  *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

1.     Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

2.     The manner in which defendants compiled or obtained its list of fax numbers;

3.     Whether defendants thereby violated the TCPA;

4.     Whether defendants thereby engaged in unfair acts and practices, in violation of Wisc. Stats. §100.20; and

5.     Whether defendants thereby converted the property of plaintiff.

The class is defined in terms of persons with fax numbers (generally or in Wisconsin, depending on the claim) who were sent faxes by or on behalf of defendants Spectrum Software Solutions, Inc., and FIRMS promoting its goods or services for sale and which did not contain an opt out notice as described in 47 U.S.C. §227.

According to the *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Protection Act of 2005*, ¶20, CG Docket No. 02-278; CG Docket No. 05-338, FCC 06-42, 21 FCC Rcd 3787; 2006 FCC LEXIS 1713; 38 Comm. Reg. (P

8

& F) 167 (April 6, 2006), defendant has the burden of proving the defense of an established business relationship under the TCPA.

Further, the presence of a compliant opt-out notice is a condition to the EBR defense. 47 U.S.C. §§ 227 (b)(1)(C)(iii) and (b)(2)(D). This requirement is extended by the regulation to cases where a fax is sent with consent. 47 C.F.R. 64.1200(a)(3).

Defendants obviously have records of the persons with whom they do business, and since the TCPA makes it illegal to send advertising faxes without either an established business relationship or the recipient's express invitation or permission, defendants can reasonably be expected to maintain records of persons who consented to the receipt of what would otherwise be illegal faxes.

Class actions for TCPA fax violations are often appropriate. *Holtzman v. Turza*, 08 C 2014, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill., Oct. 14, 2009), aff'd, 728 F.3d 682 (7th Cir. 2013); *Sadowski v. Med1 Online, LLC,* 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *CE Design Ltd. v Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Sys. v Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Lab, Inc.,* 10 C 1315, 2010 U.S. Dist. LEXIS 108339, 2010 WL 4074379 (N.D.Ill., Oct. 12, 2010); *Hinman v. M & M Rental Ctr.,* 545 F.Supp. 2d 802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters, LLC,* 08 C 3276, 2010 U.S. Dist. LEXIS 72902 (N.D. Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communs., Inc*., 08 C 4521, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App.

1st Cir. 2008); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Ok. App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285; 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns. Inc.,* 306 S.W.3d 577 (Mo. App. 2010).

The Seventh Circuit has held that the need for "separate proceedings of some character . . . to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendant violated [the law]." *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement... will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *Id.*

### C.       Rule 23(a)(3) – Typicality

Rule 23 requires that the claims of the named plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are

based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

*De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subjected to the same practice as the named plaintiff, namely they each were sent faxes by or on behalf of defendants Spectrum Software Solutions, Inc. or FIRMS, promoting their goods or services for sale and which did not contain an opt out notice as described in 47 U.S.C. §227.

### D. Rule 23(a)(4) -- Adequacy of Representation

The adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Counsel's qualifications are set forth in the Declaration of Daniel A. Edelman (Dkt. No. 7). Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

### E. Rule 23(b)(3) -- Class Action Is Superior to Other Available Methods of Resolving This Controversy

A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of

11

separate claims is small because generally the class members are unaware of their rights and have damages such that it is not feasible for them to bring individual actions.  "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group."  *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit.  This is particularly important where, as here, a large number of small and medium sized claimants may be involved.  In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . .

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court has noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly  situated.' 7B Wright et al., §1778, at 59; see, e.g., *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

*Lake v. First Nationwide Bank,* 156 F.R.D. 615, 625 (E.D. Pa. 1994).

Management of this class action is likely to present significantly fewer difficulties than those presented in many class actions, u.g., for securities fraud.

WHEREFORE, plaintiff requests that the Court certify the classes requested.

Respectfully submitted,

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Illinois Bar Number: 00712094
Heather Kolbus
Illinois Bar Number: 6278239
Attorney for Plaintiff
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, certify that on March 14, 2017, or as soon thereafter as service may be effectuated, I caused a true and accurate copy of the foregoing document to be served, via hand delivery, on the following parties:

Spectrum Software Solutions, Inc.
C/O Francis J. Kunnumpurath
6562 Ridings Road
Syracuse, New York 13206

Frank & Israel, Ltd.
doing business as FIRMS
c/o Fred Dona
6562 Ridings Road
Syracuse, New York 13206

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Illinois Bar Number: 00712094
Heather Kolbus
Illinois Bar Number: 6278239
Attorney for Plaintiff
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

14